People v Iza (2025 NY Slip Op 25231)

[*1]

People v Iza

2025 NY Slip Op 25231

Decided on October 21, 2025

Criminal Court Of The City Of New York, Kings County

Whitehair, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on October 21, 2025
Criminal Court of the City of New York, Kings County

The People of the State of New York

against
Klever Pimbomaza Iza, Defendant.

Docket No. CR-008855-25KN

Christopher E. Whitehair, J.

The Defendant, charged with operating a motor vehicle while intoxicated (Vehicle and Traffic Law § 1192 [3]), and other related charges, seeks to invalidate the People's certificate of compliance for deficient disclosure and to dismiss the accusatory instrument on the ground that he has been denied his statutory right to a speedy trial (CPL 170.30 [1] [e]; 30.30 [1] [b]). Defendant additionally seeks to suppress statements allegedly made by Defendant to law enforcement, physical evidence, and Defendant's refusal to submit to a chemical test.
In opposition, the People maintain that their certificate of compliance was filed in good faith after exercising due diligence in seeking discoverable materials. In support of their diligence, the People outline their efforts to obtain discoverable materials from the NYPD, beginning on February 24, 2025, one day after Defendant's arraignment. The People oppose Defendant's motion alleging a speedy trial violation, and likewise oppose Defendant's motions to suppress.
MOTION TO INVALIDATE THE PEOPLE'S CERTIFICATE OF COMPLIANCE
Beginning on August 7, 2025, amendments to Article 245 of the Criminal Procedure Law became effective. Among those amendments, inter alia, was the legislature's codification of the Court of Appeals' decision in People v Bay, resulting in a statutory incorporation of factors that the examining court must assess when considering whether the People's certificate of compliance [*2]was preceded by due diligence (41 NY3d 200, 212 [2023]; CPL 245.50 [5], as amended by L 2025, ch 56, part LL, § 4). Under this analytical framework, the statute requires the reviewing court to consider "the totality" of the challenged party's efforts to comply with the mandates of CPL Article 245, rather than applying a piecemeal assessment "item by item" (CPL 245.50 [5]). Specifically noting that "no one factor shall be determinative," the statute delineates a non-exhaustive list of factors to be considered cumulatively, including: "the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (CPL 245.50 [5] [a], [b]).
In addition to this framework, the legislative amendments significantly altered the mechanism for challenging the validity of a certificate of compliance, and created an inextricable link between conferral efforts and challenges. As modified, any challenge to the validity of a certificate of compliance "shall be accompanied" by an affirmation of the challenging party outlining their conferral efforts for the reviewing court. The efforts must establish that, following the certificate's filing, the challenging party "timely conferred in good faith or timely made good faith efforts to confer" with opposing counsel "regarding the specific and particularized matters" that form the basis of the challenge and explaining why "efforts to obtain the missing discovery from the opposing party or otherwise resolve the issues raised were unsuccessful, and that no accommodation could be reached" (CPL 245.50 [4] [c]). There is no formulaic requirement for the shape a conferral must take, and the statute permits the parties to do so "informally" by way of "email, telephone, or any other reasonable means" (id.). The legislature's inclusion of these changes is a demonstrable effort to cultivate collaboration between the parties with respect to discovery disputes by encouraging resolution without resort to court intervention (Governor Kathy Hochul, Press Release on 2025 CPL Amendments [FN1]
 [last accessed October 20, 2025]). In addition to this intended readjustment, the detailed provision of conferral efforts facilitates a court's informed determination of a party's diligence by revealing the efforts undertaken to obtain discoverable materials. 
Also included within the statutory changes is an alteration to CPL 245.50 (4) (c), requiring that any "[c]hallenges to the validity of a certificate of compliance or supplemental certificates of compliance . . . shall be addressed by motion within thirty-five days of the service of the certificate." The amendments only permit enlargement of this filing window upon request and where good cause is shown (CPL 245.50 [4] [c] [i]). The plain text of CPL 245.50 (4) (c) explicitly states that the 35-day rule applying to certificate of compliance challenges is to be [*3]applied prospectively rather than retroactively. The text underlying the amendments provides that the changes "shall take effect" on August 7, 2025, and "shall apply to all criminal actions pending on such date," provided however that "[a]ny timeframes . . . regarding the time limitation to challenge a certificate of compliance shall run from the effective date of this act" (CPL 245.50 [4], as amended by L 2025, ch 56, part LL, § 8). Thus, with respect to cases where certificates of compliance were filed prior to August 7, 2025, the 35-day period for defense challenges begins on August 7, 2025, rather than the earlier date of filing and service. In this case, though the certificate of compliance was filed on May 20, 2025, the 35-day period did not commence until August 7, 2025 (id.). Since Defendant's motion was filed on August 11, 2025, it was timely submitted.
It bears noting that the stated purpose of these latest discovery reforms was founded in the legislature's desire to alleviate some of the burden imposed on the prosecution by virtue of their disclosure obligations, and to reduce the number of cases dismissed for "technical errors" (Governor Kathy Hochul Press Release, see n 1, supra). While explicitly seeking to adjust for the practical consequences of the 2020 discovery reforms, the legislature did not seek to curtail a defendant's right to discovery (id. [calling the amendments "[c]ommon-sense adjustments" that "maintain due process for defendants while replacing a system that allowed for automatic dismissals"]). Though the amendments require compliance with new prerequisites before a defendant can challenge the validity of a certificate of compliance, including the 35-day rule and an obligation to collaborate through conferral, the statutory duties of the People, along with the timing of their disclosure requirements and its inseparable link to trial readiness pursuant to CPL 30.30 were all left virtually unaltered (compare CPL 245.20, as amended by L 2025, ch 56, part LL, § 2, with L 2020, ch 56, part HHH, § 2; compare CPL 245.50, as amended by L 2025, ch 56, part LL, § 4, with L 2022, ch 56, part UU, subpart D, § 1]). Furthermore, while minor tweaks were made to the language constituting what is discoverable, the breadth of discoverable material remains unchanged. 
The absence of substantive changes to these provisions, in harmony with the legislative intent that propelled the enactment of CPL Article 245, favors disclosure even when a defense challenge is untimely, to "uphold our constitutional obligations to defendants" by "[i]mplementing a system of automatic, early, and broad discovery" (CPL 245.20 [7]; 2017 NY Senate Bill S8707). By conspicuously leaving the categories of discoverable material virtually untouched, the legislature intended continued adherence to that principle. This was recognized by one sponsor's memorandum underlying the amendments which sought "a multi-pronged fix to ease the burdens of these obligations while ensuring defendants are still provided the discovery to which they are entitled" (2025 NY Senate Bill S2072). Therefore, while the statutory amendments to CPL Article 245 reflect the legislature's intention to both ease the burden on prosecutorial discovery compliance and decrease the number of case dismissals, the amendments did not substantively change a defendant's entitlement to discovery (id.; see n 1, supra; compare CPL 245.20, as amended by L 2025, ch 56, part LL, § 2, with L 2020, ch 56, part HHH, § 2). In other words, a defendant's failure to comply with either the conferral or 35-day requirements of CPL 245.50 will not implicate their right to receive discoverable materials, but may instead amount to a partial or total forfeiture of the right to challenge the validity of the People's certificate of compliance.

Sufficiency of Defendant's Conferral Efforts

Incorporated within Defendant's challenge here is a one-sentence affirmation of conferral efforts undertaken on June 26, 2025, supplemented by an email exchange between the parties. The exchange memorializes Defendant's conferral efforts, which alerted the People to a number of materials believed to be discoverable but omitted from disclosure, including: an aided report and contact information for an unidentified civilian witness, calibration records associated with the Intoxilyzer Defendant attempted to blow into, an arraignment card, roll call logs, a pre-arraignment notification report, a prisoner holding pen roster, and an NYPD online prisoner arraignment database record. In response to Defendant, the People indicated their belief that no aided report was generated for that individual, and no contact information obtained, but stated their intent to follow up with the officer for confirmation. Regarding the records related to the Intoxilyzer, the People asserted that there was "no blow" in this case, meaning Defendant did not submit to a chemical test, and therefore the records did not relate to the subject matter of the case. Likewise unrelated and not discoverable, as asserted by the People, were the various items of paperwork requested by Defendant. 
Here, Defendant established his conferral efforts regarding the "specific and particularized" materials believed to be missing from the People's disclosure (see CPL 245.50 [4] [c]). While the affirmation itself does not articulate whether these conferral efforts were ultimately unsuccessful or that no accommodation could be reached, the exchange between the parties provided here is, in most respects, self-evident of that conclusion. Though Defendant should endeavor to supply an articulation of this conclusion to the court by way of affirmation rather than exhibit, the efforts established by Defendant are sufficient to consider the instant challenge. 

Aided Report, Name, and Contact Information for Civilian Witness

Aided Report

Defendant asserts that his vehicular passenger is observed on body-worn camera footage receiving treatment from Emergency Medical Services ("EMS"), and argues that disclosure of the associated aided report is mandated pursuant to CPL 245.20 (1) (e) and (j). This issue was raised during conferral and the People indicated that, based on prior information from an earlier inquiry, no aided report was generated in this case, but that confirmation would be obtained from the NYPD. In opposition to the instant challenge, the People affirm that on April 12, 2025, they spoke with the arresting officer regarding outstanding discovery and received confirmation on April 15, 2025, that no aided report was generated in this case. Following conferral, the People "re-confirmed" this with the arresting officer. Thus, the People established their diligent efforts to obtain the aided report, which ultimately did not exist, prior to filing their certificate of compliance. As such, the omission of this report fails to constitute a basis for invalidation.

Name and Contact Information for Civilian Witness

It is apparent from conferral communications that the individual for whom Defendant seeks contact information is the same individual that Defendant sought an aided report for. The Defendant alleges that the People's failure to disclose the identity and contact information for this individual constitutes error warranting invalidation. The People informed Defendant that they were not in receipt of contact information for any witnesses, but would confirm the same with the arresting officer. In opposition, while the People confirm that no aided report was generated for this individual, they do not respond with particularity to the issue of contact information, or verify that the NYPD confirmed that no contact information had been obtained [*4]from this individual. However, since it appears that this individual was a passenger in Defendant's vehicle, and that no information from this person was obtained by the NYPD, the People's failure to disclose this information does not constitute error. 

Outstanding Reports and Paperwork

Defendant argues that the People's failure to disclose an arraignment card, pre-arraignment notification report, NYPD prisoner arraignment database report, and holding pen roster pursuant to CPL 245.20 (1) (e) warrants invalidation. In support of this argument, Defendant broadly contends that these documents contain arrest information, a narrative about the facts alleged, Defendant's whereabouts from arrest to arraignment, and "notes" about individuals in custody. The omission of these reports from the People's discovery disclosures was raised by Defendant during conferral. In response, the People maintain that these records are not discoverable. This Court agrees with the People and finds that, without a more particularized basis for their relation to the subject matter of the case at issue, these documents do not fall within the ambit of automatic discovery (see Coley, 240 AD3d at 133-134 [adopting Black's Law Dictionary definition of subject matter "as the thing in controversy or the matter spoken or written about"]). As these documents do not bear on the case itself, they are not discoverable under CPL 245.20 (1) (e), and the People did not err in their failure to disclose them. 

Calibration Records for Intoxilyzer

Despite Defendant's alleged refusal by conduct to submit to a chemical test, in both conferral and the instant motion, he claims that the calibration records for the Intoxilyzer machine he attempted to blow into are discoverable. Pursuant to CPL 245.20 (1) (s), records related to the "calibration, certification, inspection, repair or maintenance of machines and instruments utilized to perform any scientific tests and experiments" are discoverable. Here, since Defendant was unable to provide an adequate breath sample, no scientific test was performed. Consequently, the records sought by Defendant are not discoverable here, and the People's failure to disclose them fails to constitute error necessitating invalidation.

Photographs Taken by Law Enforcement

The Defendant, for the first time, raises the issue of missing photographs in the instant motion and supplies no evidence of efforts to confer with the People regarding this alleged omission. In turn, pursuant to CPL 245.50 (4), the People argue that the Defendant's challenge on this basis should be precluded from consideration by this Court. This Court agrees with the People and finds that based on Defendant's failure to confer on this issue at any point prior to filing the instant motion, the alleged omission of these photographs cannot constitute a basis for invalidation.
While the omission of photographs allegedly taken by law enforcement of the interior of Defendant's vehicle cannot form the basis of an invalidation, that does not nullify the People's statutory obligation in the first instance to disclose them (CPL 245.20 [1] [h]; discussion of statutory amendments, supra at 3-4). The statutory amendments creating conferral requirements were not intended to alter the People's overriding obligation to disclose discoverable materials, which is sequentially evidenced by the fact that a challenge only arises after disclosures have been made (CPL 245.50 [4] [c]). While the legislature evidently sought to alleviate some of the pressure mounted on the People, there is no evidence of any intention to create a circumvention [*5]of disclosure based on an incomplete conferral. After all, "the prosecutor must be a servant of the law, both seeking to avoid wrongful convictions and using every legitimate means, to bring about just ones" (2017 NY Senate Bill S8707, citing Berger v United States, 295 US 78, 88 [1935]). To that end, the People cannot insulate themselves from disclosure of discoverable materials through an oversight of Defendant's counsel.
In this case, the discovery provided by the People included disclosure of a "photo of bottles." Though this Court lacks additional information regarding the context of that photograph, given that Defendant is alleged to have driven while intoxicated, its disclosure naturally leads to the conclusion that additional photographs taken by law enforcement of the subject vehicle's interior sufficiently relate to the subject matter of the charges against Defendant or a defense thereto, necessitating disclosure (CPL 245.20 [1] [h]). Therefore, if in existence, the People are ordered to obtain the photographs taken by Officer Daniel Xiloj and disclose them to Defendant no less than 15 days prior to the suppression hearing. 
Based on the foregoing, in consideration of the factors outlined in CPL 245.50 (5) (a), and upon review of the discovery disclosures already made by the People in the instant case, this Court finds that the People have acted with due diligence and in good faith to obtain and disclose discoverable materials to the Defendant pursuant to CPL 245.20 (1). Accordingly, the Defendant's motion to invalidate the People's certificate of compliance is DENIED.

MOTION TO DISMISS PURSUANT TO CPL 170.30 (1) (e) AND 30.30 (1) (b)

The Defendant moves to dismiss pursuant to CPL 170.30 (1) (e) on the ground that he has been denied his right to a speedy trial (CPL 30.30 [1] [b]). Where, as here, the top count charged on an accusatory instrument is a misdemeanor punishable by a sentence of imprisonment which exceeds three months, the People are required to be ready for trial within 90 days of the commencement of the action (CPL 30.30 [1] [b]; Vehicle and Traffic Law § 1193 [1] [b] [i]; see People v Cooper, 98 NY2d 541, 543 [2002]). Therefore, the applicable speedy trial time is 90 days (CPL 30.30 [1] [b]).
A defendant has the initial burden of asserting that the People have exceeded the statutorily allotted time period within which they must announce their trial readiness (People v Clark, 152 AD3d 618 [2d Dept 2017]; see People v Allard, 28 NY3d 41, 45 [2016]). Thereupon, the burden shifts to the People to demonstrate that certain periods within that time should be excluded pursuant to statutorily enumerated exemptions under CPL 30.30 (4) (People v Santos, 68 NY2d 859, 861 [1986]). In assessing the speedy trial calculation, the day which begins the running of the speedy trial clock is excluded from the reckoning (People v Stiles, 70 NY2d 765, 767 [1987]; see General Construction Law § 20). As such, the commencement date is excluded from the speedy trial calculation while the last date of the calculation is included (id.; People v Stirrup, 91 NY2d 434, n 2 [1998]; People v DiMeglio, 294 AD2d 239 [1st Dept 2002]). Except for periods of excludable delay, the prescribed period within which the People must be ready for trial continues to run until the People state their present readiness for trial (see CPL 30.30 [4]; People v Price, 14 NY3d 61 [2010]; People v Cortes, 80 NY2d 201, 208 [1992]; People v Kendzia, 64 NY2d 331 [1985]). Accordingly, this Court makes the following period-to-period analysis:

February 22, 2025 to April 10, 2025

In the instant case, the accusatory instrument was filed on February 22, 2025, and the Defendant was arraigned thereafter on February 23, 2025. The filing of the accusatory [*6]instrument commenced the criminal action and the ticking of the speedy trial clock (CPL 1.20 [17]; 100.05; Cooper, 98 NY2d at 543; People v Abdullah, 133 AD3d 925 [3d Dept 2015], lv denied 27 NY3d 990 [2016]). The matter was adjourned until April 10, 2025 for the People to file initial discovery and a certificate of compliance pursuant to CPL 245.50. Accordingly, this entire period of delay is included in the speedy trial calculation (Stiles, 70 NY2d at 767; see General Construction Law § 20)(47 days included, 47 days total). 

April 10, 2025 to May 27, 2025

On April 10, 2025, the parties appeared before the court. As the People had not yet filed a certificate of compliance, the matter was adjourned until May 27, 2025, for that purpose. Thereafter, on May 20, 2025, the People filed a certificate of compliance and a statement of trial readiness. As this Court finds that the People's certificate of compliance was valid, that filing together with the statement of readiness served to toll the speedy trial clock (Kendzia, 64 NY2d at 337; CPL 245.50 [3]). Accordingly, only the period of delay from April 10, 2025 until May 20, 2025, is included in the speedy trial calculation (40 days included, 87 days total).

May 27, 2025 to July 2, 2025

On May 27, 2025, the parties appeared before the court, and the matter was adjourned until July 2, 2025, for Defendant to file reciprocal discovery and any challenges to the People's certificate of compliance. This period of delay is excluded from the speedy trial calculation (People v LaClair, 79 Misc 3d 8, 10 [App Term, 2d Dept, 9th & 10th Jud Dists 2023], lv denied 39 NY3d 1155 [2023] [adjournment on consent for defendant's discovery compliance is excluded from speedy trial calculation]; see CPL 30.30 [4] [a]) (0 days included, 87 days total). Defendant's reciprocal certificate of compliance was filed thereafter on June 23, 2025.

July 2, 2025 to August 11, 2025

On July 2, 2025, the parties informed the court of their conferral efforts, and the matter was adjourned until August 11, 2025 for further conferral and Defendant's challenge, if any, to the People's certificate of compliance. This period of postreadiness delay is excluded from the speedy trial calculation as Defendant has not asserted any lawful basis for its inclusion (People v Brown, 28 NY3d 392, 404 [2016] ["defendant ordinarily has the burden of showing that any postreadiness adjournments occurred under circumstances that should be charged to the People"]; CPL 30.30 [4] [a], [b]) (0 days included, 87 days total).

August 11, 2025 to October 21, 2025

On August 11, 2025, Defendant filed the instant motion, and a motion schedule was set. Thereafter, the parties were engaged in motion practice and the matter was adjourned for this Court's decision. Accordingly, this entire period of delay is excluded from the speedy trial calculation (CPL 30.30 [4] [a]) (0 days included, 87 days total). 
Therefore, this Court finds that 87 days are included in the speedy trial calculation. As this does not exceed the 90 days permitted under CPL 30.30 (1) (b), the Defendant's motion to dismiss is DENIED. 

MOTION TO SUPPRESS

Physical Evidence

Pursuant to CPL 710.20, Defendant moves to suppress "any and all tangible, non-tangible and testimonial fruits" of Defendant's illegal seizure. Though Defendant fails to supply facts establishing that any such evidence was seized, that omission is not fatal to Defendant's [*7]motion (CPL 710.60 [3] [a] [the court "may" summarily deny a defendant's suppression motion where it fails to allege a sufficient legal basis]) (emphasis added). Here, the inventory of discovery provided by the People evidences that photographs of "bottles" were taken and disclosed to Defendant. As such, and since the People do not refute this or contend that they do not intend to introduce those photos at trial, Defendant's motion to suppress physical evidence is held in abeyance and a Mapp hearing is ordered pursuant to CPL 710.60 (4).

Statements

The Defendant's motion to suppress his statement made to Officer Andrew Huang, noticed pursuant to CPL 710.30 (1) (a), is held in abeyance and a Huntley/Dunaway hearing is ordered pursuant to CPL 710.60 (4). Defendant's request for a hearing to determine the voluntariness of any statements made by Defendant to civilians or non-noticed statements made to law enforcement is denied as premature since no such statements have been proffered by the People.

Evidence of Refusal to Submit to a Chemical Test

With respect to Defendant's alleged refusal to submit to a chemical test, counsel moves to suppress the refusal and alternatively moves for a hearing pursuant to Vehicle and Traffic Law § 1194 (2) (f). Suppression of the Defendant's chemical test refusal is not a legally available remedy (id.; Vehicle and Traffic Law § 1194; CPL 710.20 [5]). However, a pretrial hearing to determine whether Defendant "was given sufficient warning, in clear and unequivocal language," informed "of the effect of such refusal," and thereafter persisted in his refusal is ordered pursuant to Vehicle and Traffic Law § 1194 (2) (f).

CONCLUSION

The Defendant's motion to invalidate the People's certificate of compliance is DENIED.
The Defendant's motion to dismiss based on a speedy trial violation pursuant to CPL 170.30 (1) (e) and 30.30 (1) (b) is DENIED.
A Mapp/Huntley/Dunaway hearing is ordered pursuant to CPL 710.60 (4), and a refusal hearing is ordered pursuant to Vehicle and Traffic Law § 1194 (2) (f). 
This constitutes the Decision and Order of the Court.
Dated: October 21, 2025
Brooklyn, New York

Footnotes

Footnote 1:Available at: https://www.governor.ny.gov/news/strengthening-public-safety-governor-hochul-announces-discovery-law-improvements-take-effect#:~:text=August%206%2C%202025-,Strengthening%20Public%20Safety:%20Governor%20Hochul%20Announces%20Discovery%20Law%20Improvements%20to,trial%20in%20New%20York%20State.